UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BUDGET PREPAY, INC.                          CIVIL ACTION NO. 09-cv-0149

VERSUS                                       JUDGE STAGG

QWEST COMMUNICATIONS                         MAGISTRATE JUDGE HORNSBY
CORP.

**REPORT AND RECOMMENDATION**

**Introduction**

Budget PrePay, Inc. ("Budget") filed suit in state court against Qwest Communications Corp. ("Qwest") for approximately $113,000 that Qwest was alleged to owe for telecommunication services provided by Budget. Qwest removed the case based on diversity jurisdiction and asserted a counterclaim against Budget based on alleged breach of a Wholesale Services Agreement ("WSA") pursuant to which Qwest provided telecommunication services to Budget. Qwest then filed a Motion to Stay and to Compel Arbitration (Doc. 32) based on an arbitration clause in the WSA. It is recommended, for the reasons that follow, that the motion be granted.

**Relevant Facts**

The petition, answer, and counterclaim do not include many facts, and the briefs surrounding the motion at issue are not supported by affidavits or other materials that flesh out the relevant facts. The attorneys have made certain representations of fact, such as the date costs were incurred or when the WSA terminated, without supporting evidence, but

neither party appears to challenge the factual assertions made by the other. Accordingly, the court will take into consideration the facts asserted in the pleadings as well as the apparently uncontested assertions of fact found in the memoranda.

Budget provided telecommunication services, including what the parties call "switched access services," to Qwest. Budget alleges that Qwest has refused to pay Budget approximately $113,000, plus late fees and other costs, due in connection with the sale of such services. The petition asserts that the sales were made pursuant to the terms of Budget's Louisiana Tariff No. 1. Counsel for Budget stated in later filings that he has since learned that the amount sought in the petition is for amounts owed for sales of switched access services in 40 states under 35 different tariffs, rather than under the Louisiana tariff alone. The important point is that the claim is based on sales under a tariff and not the WSA.

Budget also alleged in its petition that Qwest had committed an intentional tort against it by wrongfully claiming a right to set-off against the amounts Qwest owes Budget. This set-off claim stems from sales of telecommunications wholesale services that Qwest made to Budget (under the WSA). Budget alleges that Qwest has questioned the amount charged by Budget, filed an informal complaint with the Federal Communications Commission ("FCC"), and set off the disputed amounts against what Qwest owes Budget. This "intentional tort" part of the petition alleges that Budget buys services from Qwest and that Qwest questions the amount charged by Budget. These allegations are confusing; if Qwest

is the seller, isn't it the one who makes a charge? But when the counterclaim, discussed below, is examined, facts emerge that flesh out the relationship and explain these allegations.

Qwest alleges in its counterclaim that it entered into the WSA with Budget in 2004. Qwest agreed in the WSA to sell a variety of telecommunications wholesale services to Budget, including long distance services that Budget could resell. The WSA provided that Budget, in exchange for receiving certain rates, agreed to waive its right to charge Qwest switched access service charges that would otherwise be due. Qwest alleges that it met its obligations under the WSA by providing Budget wholesale long distance service at reduced rates. Budget, on the other hand, allegedly charged Qwest for switched access services in violation of the WSA. Budget terminated the WSA in May 2007, without resolving the disputed charges. Qwest alleges that these actions make Budget liable to it for breach of contract and on other legal theories.

Section 21.1 of the WSA provides for arbitration of disputes. It states that, with exceptions that no party argues are applicable, "any dispute arising out of, or relating to, this Agreement shall be settled by arbitration to be conducted in accordance with the Judicial Arbitration and Mediation Services ("JAMS") comprehensive arbitration rules." The WSA adds that the Federal Arbitration Act shall govern the arbitrability of a dispute, and New York law will otherwise govern any claims.

**Analysis**

Budget represents that the amount it sues for is based on short-payments made by Qwest beginning in November 2007, which was six months after termination of the WSA. Thus, Budget argues, its claims do not arise under the WSA and are not subject to its arbitration clause. Rather, Budget's claims are based solely on sales made under the terms of tariffs and on dates well after the WSA ended.

Qwest responds that the claims may not be separated so neatly. The dispute began when Qwest discovered that Budget charged Qwest for switched access services despite a provision in the WSA that waived such charges. Qwest began withholding payment on the portion of Budget's invoices that charged for switched access services. Qwest also demanded that amounts it had already paid Budget for the (waived) switched access services be refunded. It was then that Budget responded by ceasing to purchase wholesale telecommunication services from Qwest in August 2007, which is when Budget asserts the WSA ended. Budget continued thereafter to sell its services to Qwest pursuant to the terms of various tariffs. Budget represents that its suit is to collect switched access service fees that came due under the tariffs after the WSA ended, but Qwest contends that the WSA is the "true source" of the overall dispute. Qwest also represents that the amount Budget sues for in its petition is far outweighed by the amount Qwest seeks in its counterclaim for overpayments it made to Budget when the WSA was in effect.

A two-step analysis is employed to determine whether a party may be compelled to arbitrate. First, the court examines whether the party has agreed to arbitrate the dispute. This requires the court to ask: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement. Jones v. Halliburton Co., 583 F.3d 228, 233-34 (5th Cir. 2009), citing J.P. Morgan Chase & Co. v. Conegie ex rel. Lee, 492 F.3d 596, 598 (5th Cir. 2007). If yes is the answer to both questions, the court then asks whether any federal statute or policy renders the claims nonarbitrable. Id.

There is no dispute that the WSA is a valid agreement to arbitrate. Neither party has attacked its general validity. The question, then, is whether the dispute in question falls within the scope of that arbitration agreement. When making that determination, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Jones, 583 F.3d at 235, citing Safer v. Nelson Fin. Group, Inc., 422 F.3d 289, 294 (5th Cir. 2005). Accordingly, a valid agreement to arbitrate applies unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which would cover the dispute at issue. Jones, citing Personal Sec. & Safety Sys., Inc. v. Motorola, Inc., 297 F.3d 388, 392 (5th Cir. 2002).

Courts have categorized arbitration clauses as narrow or broad. A clause that requires arbitration of disputes that arise out of the contract is ordinarily considered a narrow clause. A clause like the one in this cause - which applies to "any dispute arising out of, or relating

to, this Agreement" - is considered a broad clause that is capable of expansive reach.  Jones, 583 F.3d at 235; Pennzoil Exploration & Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998).  A dispute may be subject to arbitration under a broad clause if it has a significant relationship to the contract or touches matters covered by the agreement.  Id.

A very similar dispute was presented in Orbitcom, Inc. v. Qwest Communications Corp., 2009 WL 1847355 (D. Co. 2009) when Orbitcom sued for recovery of access fees incurred after the termination of a WSA that included an arbitration clause. Qwest responded that, prior to the termination of the WSA, Orbitcom had erroneously charged it access fees so that it was entitled to a set-off or refund.  The Court noted that Orbitcom had carefully limited its complaint to issues collateral to the WSA, and there was no indication that the claims in the main demand were in any way determined by the WSA.  At first blush, the Court wrote, Orbitcom's claims did not involve any facts or occurrences that arose during the term of the WSA, and there was no showing the WSA had to be interpreted to establish the amount allegedly due.  However, the Court refused to place blinders on the reality that the parties were engaged in an ongoing relationship and had unresolved claims under the WSA that were indisputably within the scope of the arbitration clause.  The result of that arbitration would affect the main demand, possibly by way of set-off, and the Court was persuaded that the public interest against piecemeal litigation and the policy to resolve doubts in favor of arbitration warranted granting the motion to compel arbitration.

There may be some factual distinctions between Orbitcom and this case, but the undersigned is persuaded that the general approach is correct. Budget makes its claim for $113,000 based on transactions that occurred after the WSA. Even so, Budget's petition also describes Qwest's claim to have a right to set-off against those amounts; Budget characterizes the claim as an intentional tort and unlawful self-help. Budget's petition does not mention the WSA, but it is now known that the Qwest set-off/intentional tort Budget describes is based on the WSA. Thus, even Budget's petition shows that Qwest's claims that arise under the WSA are significantly related to the claims asserted in the petition, no matter how much Budget attempts to separate them. Budget's claims, just like Qwest's counterclaim, either arise from or relate to the WSA, so they are all subject to arbitration.

Budget next argues that Qwest has chosen the FCC as its forum to litigate its claims under the WSA and, accordingly, is barred from now using the WSA to force arbitration in this litigation. An election of remedies doctrine provides that once a complainant files a complaint with the FCC he is barred from bringing suit in federal court on the same claim. Qwest is adamant that its complaint before the FCC is based on Budget's allegedly improper charges for interstate traffic, while this action turns solely on the interpretation of the state tariffs that govern Budget's intrastate charges and the contract law governing the WSA. Qwest contends that its counterclaim under the WSA does not interject any claims based on the Federal Communications Act. Budget disagrees and takes the position that Qwest has brought "this claim" in the FCC proceeding. The parties cite parts of a motion to strike, a

reply, and other documents filed with the FCC. The court, quite frankly, cannot determine from the current record the scope of the complaint before the FCC and whether it may overlap with the counterclaim. The undersigned is satisfied that Budget's petition claims sufficiently relate to the WSA that they fall within the scope of its arbitration clause. The proper remedy is to stay this entire case so that Budget, if it wishes to pursue its claims, must present them to arbitration in accordance with the WSA. If Budget elects to pursue arbitration and Qwest chooses to assert a counterclaim under the WSA in an arbitration proceeding, the arbitrator may then determine whether the counterclaim is permissibly asserted in light of the FCC proceedings involving these same parties.

A stay is mandatory upon a showing that the opposing party has commenced suit on an issue referable to arbitration under a written agreement. 9 U.S.C. § 3. A stay is appropriate in this case. The court should also administratively close this case, as there is no foreseeable task left for the district court in connection with the potential arbitration. If a prevailing party seeks to confirm an award made in the arbitration, they may seek that relief by filing a new civil action. There is no reason to keep this civil action open and pending on the court's calendar, where it could remain pending indefinitely.

Accordingly,

**IT IS RECOMMENDED** that the Motion to Stay and to Compel Arbitration (Doc. 32) be granted, that Budget Prepay, Inc. be directed to submit to arbitration all of its claims asserted in this case that it wishes to pursue, that this case be stayed, and that the Clerk of

Court administratively close this case, subject to the right of any party to file a motion to reopen based on good cause.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of September, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE